EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: THE PREMISES LOCATED AT 11985 NS 3580, SEMINOLE, OK 74868, IDENTIFIED BY PARCEL 0000-02-009-006-4-017-00, LOCATED WITHIN THE EASTERN DISTRICT OF OKLAHOMA | **Case No.**    25-MJ-84-JAR |

### APPLICATION FOR ANTICIPATORY SEARCH WARRANT

I, Joseph Hubbard, a federal law enforcement officer or an attorney for the government, request an anticipatory search warrant and state under penalty of perjury that I have reason to believe that there will be concealed on the following person or property located in the **EASTERN** District of **OKLAHOMA** *(identify the person or describe property to be searched and give its location)*:

**SEE ATTACHMENT "A"**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 7 U.S.C., Section, 136j(a)(2)(F)), Title 18 U.S.C. Sections, 545, 1716, and 1341, and the application is based on these facts:

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Joseph Hubbard
Special Agent
Environmental Protection Agency, CID

Sworn to:

Date:    __March 14, 2025_____

_____
*Judge's signature*

City and state:    __Muskogee, Oklahoma__

 JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Joseph Hubbard, the affiant, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the United States Environmental Protection Agency (EPA) Criminal Investigation Division (EPA-CID) in Dallas, Texas. I have been employed with EPA-CID since June 2023. Before joining EPA-CID, I served in numerous roles for the EPA since May 2010, most recently as a Financial Integrity Coordinator in the Region 6 Water Division. During my employment with the EPA-CID, I have conducted/participated in numerous investigations of suspected violations of Federal law, violations of the Clean Water Act, Clean Air Act, and the Resource Conservation and Recovery Act. I have received training on how to conduct complex investigations and I have participated in the execution of arrest and search warrants involving various Federal violations. My investigative training and experience includes but is not limited to, conducting surveillance, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, managing confidential human sources and cooperating witnesses/defendants, issuing subpoenas, collecting evidence, and analyzing public records. I have also received training and have experience in obtaining, receiving, and reviewing electronic records, including obtaining forensic extractions of cellular telephones, and reviewing data obtained from cellular telephones and social media platforms/messaging applications. I have completed the Criminal Investigator Training Program and the Environmental Investigations Basic Course. These courses addressed issues of violations of state and federal environmental statutes and techniques employed in federal law enforcement.

2.      My responsibilities as a Special Agent include the investigation of criminal violations of federal statutes, including the Federal Insecticide, Fungicide, and Rodenticide Act

1

(FIFRA), Title 7, United States Code, Sections 136, *et seq*. and other criminal violations under Title 18 of the United States Code. I am also an Officer in the Texas Army National Guard, assigned as an Executive Officer/Second in Command for an Infantry Battalion of over 756 Soldiers. I have multiple combat deployments, numerous military service awards, and badges.

3.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am duly authorized by Title 18, United States Code, Section 3063, to carry firearms, to execute and serve any warrant or other process issued under the authority of the United States, and to make arrests without warrants for any offense committed in my presence or for any felony offense that I have probable cause to believe the person to be arrested has committed or is committing.

**PURPOSE OF THE AFFIDAVIT**

4.      The information contained within this Affidavit is based on my personal knowledge and my training, education, and experience, as well as information that I have received from regulatory personnel or agencies, the information contained in records that are maintained by agencies and employees of the government of Oklahoma, and information provided by individuals with knowledge of relevant facts. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are sufficient to establish probable cause that violations of 7 U.S.C. § 136j(a)(2)(F)), 18 U.S.C. § 545, 18 U.S.C. § 1716, and 18 U.S.C. § 1341 (the "**SUBJECT OFFENSES**") have been committed and that instrumentalities, fruits, and evidence of violations of the **SUBJECT OFFENSES** are located in or at the **PREMISES**. This Affidavit presents only those facts which are sufficient and necessary to

2

promote the purpose of the Affidavit, described below. Thus, this Affidavit should not be construed to contain all facts known to me and EPA-CID regarding the matter under investigation.

5.    I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the property located at 11985 NS 3580, Seminole, OK 74868, identified by parcel 0000-02-009-006-4-017-00 (the "**PREMISES**"), which is within the Eastern District of Oklahoma. A medical marijuana farm currently operates at the **PREMISES**. The **PREMISES** consists of a two (2) acre land parcel, further described in Attachment A. This application seeks to search the **PREMISES**, specifically, the entire land (conveyances, tributaries, streams, creeks, waste piles, soil, surface water, groundwater, vegetation, liquids, and other substances) and the storage tanks/containers located on the parcel, as well as evidence of unlawful receipt, sell, distribution, or use of illegal pesticides as further described in Attachment B (the "**TARGET EVIDENCE**").  The **TARGET EVIDENCE**, if found, at the **PREMISES** is likely to be evidence and/or contraband or fruits of the following **SUBJECT OFFENSES**:

A.    7 U.S.C. § 136j(a)(2)(F))

o    It shall be unlawful for any person in any State to distribute or sell to any person any pesticide that is not registered.

B.    18 U.S.C. § 545

o    Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper.

C.    18 U.S.C. § 1716

o    All kinds of poison, and all articles and compositions containing poison … hazardous materials, inflammable materials, infernal machines, and mechanical, chemical, or other devices or compositions which may ignite or explode … and all other natural or artificial articles, compositions, or material which may kill or injure another, or injure the mails or other property, whether or not sealed as first-class matter, are nonmailable matter and shall not be conveyed in the mails or delivered from any post office or station thereof, nor by any officer or employee of the Postal Service.

D.    18 U.S.C. § 1341

o    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations … for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service … shall be fined under this title or imprisoned not more than 20 years, or both.

## APPLICABLE LAWS AND LEGAL BACKGROUND

6.    The Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 to 136(y), regulates the production, sale, distribution, and use of pesticides in the United States. A "pesticide" is any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest. 7 U.S.C. § 136(u); 40 C.F.R. § 152.3. The term "pest" is broadly defined to include, among other things, insects and rodents. 7 U.S.C. § 136(t); 40 C.F.R. § 152.5(d).

4

7.    FIFRA requires all pesticides to be registered with EPA before they can be sold or distributed in the United States. 7 U.S.C. § 136a(a). The registration process is detailed, and applicants are required to submit a substantial amount of information to EPA in support of a request for registration. "'Distribute or sell' means to distribute, sell, offer for sale, hold for distribution, hold for sale, hold for shipment, ship, deliver for shipment, release for shipment or receiving and (having so received) deliver or offer to deliver." 7 U.S.C. § 136(gg).

8.    FIFRA also requires anyone to distribute or sell, or to make available for use, or to use, any registered pesticide classified for restricted use for some or all purposes other than in accordance with section 136a(d) of this title and any regulations thereunder, except that it shall not be unlawful to sell, under regulations issued by the Administrator. 7 U.S.C. §136j(a)(2)(F)).

9.    Information that must be submitted in support of an application to register a pesticide include the complete formula of each pesticide for which registration is sought, including the identity of its active and inert ingredients; all proposed labeling for the pesticide; and a statement of all pesticidal claims to be made for the pesticide. *See* 7 U.S.C. § 136a(c); 40 C.F.R. § 158.155.

10.    Registered pesticides are given a product registration number beginning with the phrase "EPA Reg. No." Pesticide-producing establishments also receive an establishment registration number (designated by the phrase "EPA est. No."). 40 C.F.R. §§ 10(e) and 156.10(f). As a condition of registration, all registered pesticides must have a label that bears both the product registration and establishment registration numbers. 40 C.F.R. §156.10(a). This label also must contain several other pieces of information, such as the directions for the use of the pesticide (40 C.F.R. § 156.10(i)); child hazard warnings (40 C.F.R. § 156.66); a first aid statement (40 C.F.R. § 156.68); precautionary statements for humans and domestic animals (40 C.F.R. § 156.70); and environmental hazard and precautionary statements (40 C.F.R. §§ 156.80 and 156.85). Proposed

5

labels must be submitted to EPA along with the application for registration. 40 C.F.R. § 152.50(e).

11.    Under FIFRA, the term "person" means any individual, partnership, association, corporation, or any organized group of persons whether incorporated or not. 7 U.S.C. § 136(s).

12.    FIFRA defines "labeling" to mean all labels and all other written, printed, or graphic matter accompanying the pesticide at any time. 7 U.S.C. § 136(p)(2). Additionally, all required labels or labeling text shall appear in the English language. 40 C.F.R. §156.10(a)(3)

13.    Under FIFRA, it is a misdemeanor criminal offense to knowingly violate any provision of the statute, including pesticide misuse. 7 U.S.C. § 136l(b)(1)(B).

14.    U.S. Customs and Border Protection, Department of Homeland Security regulations require a notice of arrival for pesticides and devices entering into the United States. 19 CFR § 12.112 Notice of arrival of pesticides and devices. An importer or the importer's agent desiring to import pesticides or devices into the United States must submit to the Administrator, prior to the arrival of the shipment in the United States, a Notice of Arrival of Pesticides and Devices (Notice of Arrival) on U.S. Environmental Protection Agency (EPA) Form 3540-1. The Administrator will complete the Notice of Arrival and provide notification to the importer or the importer's agent indicating the disposition to be made of a pesticide or device upon its entry into the United States. In the alternative, the importer or the importer's agent may file an electronic alternative to the Notice of Arrival, with the filing of the entry documentation, via any CBP-authorized electronic data interchange system.

## **JURISDICTION**

15.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## ADDRESS TO BE SEARCHED

16.    The **PREMISES** to be searched is Scott's Green LLC and/or J&D Grow LLC, a large medical marijuana farm located at 11985 NS 3580, Seminole, OK 74868, located within the Eastern District of Oklahoma, identified by parcel 0000-02-009-006-4-017-00. The **PREMISES** is a large plot of land, registered as 20 acres in size, containing an unknown number of (approximately 20) greenhouses, two shop buildings at 20x40x10, two floating boat docks at 20x20x8, and a 3,612 square foot residence. Vehicle entrance to the **PREMISES** is located on NS 3580 Road and the land is located on the west side of the road. The **PREMISES** is surrounded by additional plots of land not associated with this investigation to the North, South, and East. The primary resident of the **PREMISES** is unknown.



*Figure 1: Aerial view encompassing the entirety of the PREMISES.*

## PROBABLE CAUSE

17.    On or about February 25, 2025, U.S. Customs and Border Patrol (CBP) in Oklahoma City, OK, notified EPA-CID that on February 25, 2025, they intercepted a package addressed to

**LU**, A Chi, at the **PREMISES**, with the reference telephone number: 626-463-3162 (hereinafter, the "**PACKAGE**"). The **PACKAGE** was shipped through DHL with reference number 1689470152A. The return address is Huizhou Mingju, Technology CO LTD, Zhou Chen FU (DUS-P), Room 03, 25th Floor, Block A, Fangzhi Plaza, NO. 18, Huanhu 3rd Road Huicheng District, Hueheu City, HK, Hong Kong, HONG KONG SAR, CHINA.

18.    The shipping document (image A-1 below) misidentified the contents of the **PACKAGE**. Specifically, the shipping document stated the **PACKAGE** contained 25 plastic cell phone cases, 22 Polyvinyl chloride data lines, and 15 stainless steel latch fitments. However, the **PACKAGE** contained 40 to 50 pounds of items that are likely unregistered pesticides. The information on the product labels was written in Chinese and lacked any corresponding English labels. According to Google Translate, the markings on the bag indicated the product was an insecticide, smoke for greenhouse, and carbamate.



*A-1: Image of shipping document.*

8

19.    The United States is investigating Scott's Green LLC also known as "J&D Grow LLC," and associates for potential violations of the **SUBJECT OFFENSES**.

20.    According to the Oklahoma State Bureau of Narcotics and Dangerous Drug Control (OBNDD), Scott's Green LLC is registered with the state of Oklahoma as a medical marijuana grower with the OBNDD registration number of 4301844.

21.    According to the Oklahoma Secretary of State, Scott's Green LLC is a Domestic Limited Liability Company operating at the **PREMISES**. The company was formed on June 2, 2020, and the LLC's status is currently "in existence." The registered agent of Scott's Green LLC is Jing Zun Dong. Additionally, according to the Oklahoma Secretary of State, **J&D Grow LLC** is a Domestic Limited Liability Company operating at the **PREMISES**. The company was formed on December 28, 2021, and the LLC's status is currently inactive.[1]  The registered agent of **J&D Grow LLC** is J&D Grow LLC.

22.    In December 2021, according to the Seminole County Property Assessor, quitclaim deeds were issued for the transfer of the **PREMISES** from HONG, Chen and JIANG, Dian Lin to solely JIANG, Dian Lin. Additionally, on April 1, 2022, the **PREMISES** was quitclaim deeded from JIANG, Dian Lin to J&D Grow.

23.    On or about November 3, 2022, Homeland Security Investigations (HSI) and the Oklahoma Bureau of Narcotics (OBN) started an investigation for an illegal marijuana grow located at 1420 Smokey Ridge Rd, Ardmore, OK. According to an October 2024 United States Citizenship and Immigration Services application submitted by **CHI,** Jin Zhao (**CHI**), 1420 Smokey Ridge Rd, Ardmore, OK, is associated with **CHI**'s phone number. **CHI**'s phone number was also listed on the DHL **PACKAGE** to the **PREMISES**.

---

[1] Per the Oklahoma Secretary of State's website, "inactive" means, " a domestic or foreign LLC or LP is over 60 days delinquent in filing its annual report."

9

24.    On July 23, 2024, OBN, the Oklahoma Medical Marijuana Authority, the Oklahoma Attorney General's Office, and the Carter County Sheriff's Office executed a search warrant of an illegal marijuana grow operation at 1420 Smokey Ridge Rd, Ardmore, OK. A LIN, Bo is also associated with this address and has a criminal history which includes, but is not limited to, smuggling aliens, use of a firearm while committing a felony, and cultivation of controlled dangerous substance.

## INSTALLATION OF COVERT TRANSMITTING DEVICE

25.    Investigators seek permission to install a covert sensor and/or a GPS transmitting device(s) inside the **PACKAGE**. These devices will aid officers in determining when the **PACKAGE** is opened as well as where the **PACKAGE** is physically located. These devices are location transmitters only and will not monitor voice conversations.

26.    The covert sensor is designed to emit a notification signal when the **PACKAGE** is opened. Since law enforcement expects the **PACKAGE** will be taken into a private residence when the **PACKAGE** is accepted, authority is sought to monitor the signals of the devices in private areas, such as buildings, residences and other closed structures, which are not public (including, but not limited to, the **PREMISES**).

27.    In some instances, the intended recipients of parcels containing illegal pesticides arrange for the parcels to be mailed to addresses with which they are not associated in order to distance themselves from being arrested during a controlled delivery. In those situations, after the delivery is made, the parcel is transported to another location in order to meet with the true recipient.

28.    Thus, this application seeks permission for law enforcement to install a GPS tracking device within the parcel. The GPS will be used to monitor the whereabouts of the **PACKAGE**

including those times when the package has entered the residence or other private property, including at its ultimate destination.

29.     Officers will attempt to deliver the **PACKAGE** to its intended location using an Officer in an Under-Cover Capacity. After the **PACKAGE** has been delivered and taken into the residence, officers will maintain surveillance on the **PREMISES** and will monitor the covert transmitting device(s) until they serve the warrant.

30.     Officers have a limited amount of time for the **PACKAGE** to be opened due to the longevity of the batteries at which time the device(s) will stop transmitting. The device(s) may also quit transmitting due to damage to the equipment or they are unable to transmit from inside the structure, at which point the officers have an obligation to retrieve evidence and equipment. Therefore, upon successful delivery of the **PACKAGE** inside the **PREMISES**, and at the discretion of the officers, investigators may execute the search warrant prior to receiving an alert indication by the transmitting device(s).

<u>**CONTINGENCY CLAUSE**</u>

31.     Contingent on the **PACKAGE** being delivered, accepted, and taken inside the **PREMISES**, this warrant will then be executed.

32.     Based on the above information there is probable cause to believe that individual(s) residing at the **PREMISES** are involved in the illegal distribution, sale and/or use of pesticides in violation of 7 U.S.C. § 136j(a)(2)(F), and there is probable cause to believe that evidence of pesticide will be found in a search of the **PREMISES**. Based on the above information, I request a warrant be issued for the **PREMISES**.

### COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

33.    As described above and in Attachment B, this application seeks permission to search for records that might be found on the **PREMISES**, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

34.    *Probable cause.*  I submit that if a computer or storage medium is found at the **PREMISES**, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operations, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

34.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files and information that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium at the **PREMISES** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other

external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media

14

access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance

the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

35. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the **PREMISES**, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it

16

requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data at the **PREMISES**. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

36. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted

17

scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

37.     Because several people share the **PREMISES**, it is possible that the **PREMISES** will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

38.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying electronic storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

39.     Scott's Green LLC is a functioning company that likely conducts legitimate business. Seizing the computers may limit the company's ability to conduct its legitimate business. As with any search warrant, I expect that this warrant will be executed reasonably. Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, agents will copy data, rather than physically seize computers, to reduce the extent of disruption. If employees of Scott's Green LLC so request, the agents will, to the extent practicable, attempt to provide the employees with copies of data that may be necessary or important to the continuing function of Scott's Green LLC's legitimate business. If, after

18

inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will promptly return it.

<u>CONCLUSION</u>

40.    I submit that this affidavit and its attachments support probable cause for a search warrant authorizing a search of the **PREMISES** described in **Attachment A** to seek the items described in **Attachment B**.

Respectfully submitted,

_____

JOSEPH HUBBARD
Special Agent
EPA-CID

Sworn to me on March 14, 2025:

_____

UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

*Property to Be Searched*

The property to be searched is Scott's Green LLC and/or J&D Grow LLC, a large medical marijuana farm located at 11985 NS 3580, Seminole, OK 74868, identified by parcel 0000-02-009-006-4-017-00, located within the Eastern District of Oklahoma (hereinafter, the "**PREMISES**"). The **PREMISES** encompasses 20 acres, containing an unknown number of (approximately 20) greenhouses, two shop buildings at 20x40x10, two floating boat docks at 20x20x8, and a 3,612 square foot residence. Vehicle entrance to the property is located on NS 3580 Road and the land is located on the west side of the road. The **PREMISES** is surrounded by additional plots of land not associated with this investigation to the North, South, and East. The search of the **PREMISES** shall include the entire parcel of land, all persons, buildings, vehicles, sheds, trailers, and areas located on the **PREMISES**. Additionally, the entire land (conveyances, tributaries, streams, creeks, waste piles, soil, surface water, groundwater, vegetation) and storage tanks (and associated equipment such as hoses) are subject to search to perform sampling and forensic testing. Connection to the vehicles may be established by evidence that anyone residing at the **PREMISES** and/or the SUBJECTS own, operate, and/or have access to any vehicle parked at in or front of the **PREMISES**. Evidence includes law enforcement observation, vehicle registration, subject admission, or possession of an ignition key.

20



Figure A-1: Google Ariel image of the PREMISES



Figure A-2: Seminole County Assessor's Map of residence on the PREMISES

21



Figure A-3: Seminole County Assessor's Map of shed at PREMISES.



Figure A-4: Seminole County Assessor's schematic of residence of **PREMISES**.

**ATTACHMENT B**

*PROPERTY TO BE SEIZED*

1.  All records, information, evidence, contraband, and property designed and intended for use as the means for committing the criminal offenses relating to violations of 7 U.S.C. 136j(a)(2)(F)) (FIFRA's requirements related to pesticide distribution, sale, or use in United States); 18 U.S.C. 545 (smuggling), 18 U.S.C. § 1716 (injurious articles as nonmailable), and 18 U.S.C. § 1341 (mail fraud), those violations involving Scott's Green LLC and/or J&D Grow LLC and its employees, and CHI, Jin Zhao, and including:

2.  Any FIFRA-prohibited pesticides.

3.  Any list of customers relating to the purchase, sale and/or distribution of any and/or FIFRA-prohibited pesticides.

4.  Any types, amounts, and prices of FIFRA-prohibited pesticides trafficked as well as dates, places, and amounts of specific transactions.

5.  Any evidence relating to the purchase, sale and/or distribution of FIFRA-prohibited pesticides.

6.  Evidence of other means of communication (including in person meetings, text messages, phone calls) the persons who used the electronic devices and their co-conspirators employed to communicate regarding the purchase, sale and/or distribution of FIFRA-prohibited pesticides.

7.  All records, files, contracts, agreements, bill of ladings, shipping manifests, or other documents regarding the purchase or acquisition of FIFRA-prohibited pesticides.

8. Any records, files, contracts, agreements, or other documents, correspondence, memoranda, files, or other documents which reflect Scott's Green LLC and/or J&D Grow LLC,

23

handling, storage, treatment, or disposal of pesticides and/or treatment of agriculture plants.

9.  All personnel records for employees of Scott's Green LLC and/or J&D Grow LLC, which provide information regarding the identity, contact telephone numbers, and addresses as well as information regarding the positions and job descriptions of Scott's Green LLC and/or J&D Grow LLC, employees.

10. Any documents, records, files, or memoranda that describe the operations of Scott's Green LLC.

11. Drivers' logs, trip records, bills of ladings, manifests, fuel purchases, weigh certificates, or other documents relating to the transportation of FIFRA prohibited pesticides to and from Scott's Green LLC and/or J&D Grow LLC.

12. Any and all records that demonstrate knowledge of federal, state, or local environmental and safety statutes and regulations by Scott's Green LLC and/or J&D Grow LLC, its owners, managers, or employees.

13. Telephone records, address books, and customer account information.

14. Ledgers, bank records, receipts, billing information, accounting, and bookkeeping records.

15. Materials describing any services related to "pesticides".

16. Any information relating to shipping, receiving, shipping, storing, and transporting of FIFRA prohibited pesticides including materials such as invoices, bill of ladings, and purchase information.

17. Business-related information associated with any government entity, including correspondence or applications for federal, state, and local permits or licenses required under the FIFRA or any state or local law regarding pesticides.

18. Desktop computers, personal computers, network computers, servers, mobile phones, and any other computer device ("COMPUTER") located on the premises. The warrant authorizes the access, search, and copying of information stored on each computer, including but not limited to "deleted," hidden, or encrypted data to determine whether the data falls within the list of items to be seized. To enable a qualified computer expert to accurately retrieve the system's data in a laboratory or other controlled environment, the search team seeks authorization to seize the computer hardware, and associated peripherals, that are believed to contain some or all of the evidence described above and to conduct off-site search of the hardware for the evidence described, if, upon arriving at the scene, the agents executing the search conclude it would be impractical to search or copy the computer hardware on-site for this evidence.  The EPA intends to obtain forensic images of any computers and their storage devices while on-site, to the extent practicable.  Agents will make all reasonable efforts to not disrupt the integrity of any legitimate business.

19. For any COMPUTER that is called for by this warrant or that might contain items otherwise called for by this warrant:

a. evidence of who used, owned, or controlled the COMPUTER at the time the items described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, user profiles, e-mail, e-mail contacts, chat or instant messaging logs, photographs, and correspondence;

b. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

c. evidence of how and when the COMPUTER was used or accessed to determine the

25

chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

d. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

e. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

f. contextual information necessary to understand the evidence described in this attachment.

20. Any and all computers and storage media that reasonably appear to contain some or all of the records, information, and/or evidence described in Attachment B.

21. As used above, the terms "records" and "information" include all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

22. During the execution of the search of the **PREMISES** described in Attachment A, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of any individual, who is found at the **PREMISES** and reasonably believed by law enforcement to be a user of a device found at the **PREMISES**, to the fingerprint scanner of the device; (2) hold a device found at the **PREMISES** in front of the face those same individuals and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

**SPECIAL CONDITIONS PERTINENT TO SEARCHES**

23.  The following special conditions are applicable to the searches of the premises described in Attachment A and vehicles located at the premises:

24.  Special Agents with the EPA-CID will be leading the execution of this search warrant. The Special Agents executing the search warrant are authorized to enlist the assistance of necessary personnel, including EPA Emergency Responders and technical contractors retained by the EPA, Agents with Homeland Security Investigations Agents, the Oklahoma State Bureau of Investigations, Oklahoma State Bureau of Narcotics, and Criminal Investigators from the Oklahoma Department of Environmental Quality.

25.  The search team and any necessary technical personnel are authorized to access, search, and copy electronic data that relates to the internal tracking of equipment, inventory, samples, analysis, and analytical results.

26.  The search team is authorized to inventory, inspect, photograph, videotape, and seize records as further described above.

27.  The search team is authorized to inventory, inspect, and photograph all vehicles located at the search site during the execution of the warrant.

28.  The search team shall be allowed to sketch, photograph, and videotape all interior and exterior portions of the premises and all vehicles located therein.

29.  For the safety of the search team and the preservation of evidence, the search team may restrict the movement of any vehicle on the premises during the searches.

30.  The search team is authorized to exclude from the search sites and from any part of the surrounding vicinity designated by the search team as potentially unsafe, all persons who are not authorized to assist in the search. Search team members may bar all public access during the

27

execution of the search warrants if the presence of such persons will interfere with the efficient or safe performance of the activities authorized by the warrants.